UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAVID C. OGULA,

                            Plaintiff,          **REPORT AND RECOMMENDATION**

       -against-                         **20-CV-6346 (EK)(LB)**

CITY OF NEW YORK, FIRE DEPARTMENT
OF NEW YORK (FDNY), TERRYL L.
BROWN, STEPHEN RUSH, and
DANIEL A. NIGRO,

                         Defendants.
-----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff David C. Ogula brings this *pro se* employment discrimination action pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq*. ("Title VII"), the Age

Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Federal Equal

Pay Act, 29 U.S.C. § 206(d) ("EPA"). Plaintiff also brings claims pursuant to the New York

State Human Rights Law, N.Y. Exec. §§ 290 *et seq*. ("NYSHRL"), the New York City Human

Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"), and New York Labor Law § 194

("NYLL"). Plaintiff's Second Amended Complaint ("SAC") alleges, *inter alia*, that defendants

the City of New York, the Fire Department of New York ("FDNY"), Terryl Brown, Stephen

Rush, and Daniel Nigro (hereinafter "defendants") discriminated against him because of his

gender, national origin, race, and age, created a hostile work environment because of plaintiff's

national origin, and retaliated against him after he engaged in protected activity. Defendants now

move to dismiss all of plaintiff's claims against them. The Honorable Eric Komitee referred

defendants' motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For

the reasons set forth herein, it is respectfully recommended that defendants' motion to dismiss

should be granted.

## BACKGROUND

For the purposes of defendants' motion to dismiss, all well-pleaded allegations in plaintiff's SAC are taken as true and all inferences are drawn in his favor. [1] ECF No. 33.

Plaintiff is a black male of Nigerian origin. SAC ¶ 7. Plaintiff was approximately sixty (60) years old at the time of the facts alleged. Id. ¶ 54. Plaintiff holds a master's degree in public administration and a doctoral degree in management and organizational leadership. Id. ¶ 19. He has practiced in the Human Resources ("HR") profession for more than twenty-five years. EEOC Amended Charge ("Am. Charge"), ECF 42-1 at 4.

Plaintiff began working at the FDNY on May 27, 2007 as Assistant to the Assistant Commissioner ("AC") of HR, Donay Queenan. SAC ¶ 20. He initially served in the civil service title of Administrative Staff Analyst, non-managerial provisionally. Id. In February 2016, plaintiff was promoted to the position of Director of Civilian Learning and Development with a civil service title of Executive Program Specialist and retained "extensive responsibilities" of his prior role. Id. Plaintiff alleges that the FDNY offered him the promotion to keep him at the FDNY after he had been offered the position of Director of HR at New York City's Department of Investigation ("DOI"). Id. Plaintiff most recently held the civil service title of Administrative Staff Analyst on a permanent basis. Id.

Deputy Commissioner Terryl Brown assumed oversight over the FDNY HR bureau in the beginning of 2018. Am. Charge, ECF 42-1 at 10. In that role, Brown began supervising or

---

[1]  The Court also considers plaintiff's administrative filings attached to or incorporated by reference within the SAC, Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (concluding that on a 12(b)(6) motion, the court may consider any document "attached to the complaint or incorporated by reference" or "upon which the complaint *solely* relies and which is *integral* to the complaint . . . ." (emphasis in original) (citations omitted)), and factual allegations made in plaintiff's papers opposing the motion. See, e.g., Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (considering "further" allegations made in *pro se* plaintiff's affidavit in opposition to defendants' motion to dismiss).

otherwise overseeing the work of plaintiff and his colleagues in HR, including Bridget Hamblin, Marie Giraud, and Ayana Brooks, all of whom are US-born, female, and at the time of the facts alleged, were approximately 40 years old, 37 years old, and 40 years old respectively. SAC ¶¶ 10, 28–29, 54. Donay Queenan retired from her position as Assistant Commissioner of HR in January 2019. Am. Charge, ECF No. 42-1 at 9. Plaintiff continued in his role as Director of Civilian Learning and Development until on or about September 4, 2019, when he returned to his previous non-managerial civil service title of Administrative Staff Analyst. Am. Charge, ECF No. 42-1 at 50.

Plaintiff alleges that in 2019, he, Giraud and Hamblin were all seeking senior management positions in the HR bureau, and that Brown appointed Giraud and Hamblin to senior managerial positions despite their lack of HR experience and qualifications. SAC ¶¶ 28, 54–55. Plaintiff alleges that Brown also selected Brooks as Assistant Commissioner of HR though she did not have the preferred skills for the position.[2] Id. ¶¶ 29, 77.

I.    Associate Commissioner Position & Hamblin's Promotion

In or around January 2019, Hamblin applied for an Assistant Commissioner position in the HR bureau. Id. ¶ 58. On April 24, 2019, Brown sent plaintiff an email, requesting that he provide her with Hamblin's civil service title and salary range, and determine whether the title "has levels." Id. She also asked plaintiff if he thought there was "room" for Hamblin to move up a level. Id. Later that day, Brown asked plaintiff if he thought that it would be "fair" for an Associate Commissioner to "be at [level] 6" if Assistant Commissioners are typically "between [levels] 3-5." Id. The next day, Brown told plaintiff that she wanted to create an Associate Commissioner position for Hamblin and requested that plaintiff draft a memorandum proposal

---

[2] Plaintiff alleges in his amended EEOC charge that Brooks declined the offer. Am. Charge, ECF No. 42-1 at 22.

for the position to submit to the Fire Commissioner, Daniel Nigro, for his approval. SAC ¶¶ 59–60. Plaintiff's reply suggested that Brown complete a "more comprehensive review" prior to proposing the position and that she issue a job posting for the position. Id. ¶ 60. Plaintiff also sent Brown a draft of the memorandum proposal as requested and a draft job post. Id. ¶ 62. Brown did not respond to plaintiff's suggestions that she should conduct a comprehensive review and issue a job post before proposing the creation of the position for Hamblin. Id. ¶ 60.

On May 3, 2019, a job posting for an Associate Commissioner position at the FDNY with a "manager level 5" was listed on the City's Department of Citywide Administrative Services ("DCAS") website.[3] Id. ¶ 64. The job description provided minimum qualification requirements and a "knowledge of civil service laws and rules" or "Juris Doctor from an accredited law school and ten years of legal experience" as "preferred skills" for the position. Id. Plaintiff applied for the position that same day. SAC ¶¶ 21, 70. The post noted that it would be on the DCAS website for one day and was removed on May 4, 2019. Id. ¶ 65. On May 17, 2019, the website listed a job posting for an "Associate Commissioner/Deputy Legal Counsel" position with the same job description as the May 3 post. Id. ¶ 67. The posting remained on the website for five days, until May 22, 2019. Id. ¶ 68. City personnel rules require that job postings be listed on the DCAS website for a minimum of ten days. Id. ¶ 65.

Hamblin was ultimately selected to be Associate Commissioner of HR. Id. ¶ 98. The FDNY acknowledged that plaintiff had applied for the Associate Commissioner position that was posted on May 3, 2019 but did not interview him or inform him whether he had been considered for the job. Id. ¶¶ 21, 70. The FDNY later stated that plaintiff did not have a legal background and was thus unqualified for the position. Id. ¶ 74. As Associate Commissioner, Hamblin earned

_____

[3] The DCAS manages job posts for position openings at the FDNY.

4

a yearly salary of between $140,000 and $175,000, while plaintiff earned $124,164 during the same period. Id. ¶ 148.

II.    Assistant Commissioner Position & Giraud's Promotion

On or around January 10, 2019, the DCAS website listed a job posting for the position of Assistant Commissioner of Candidate Investigation Division ("CID"). Am. Charge, ECF No. 42-1 at 34. Giraud applied for the position shortly thereafter. Id. Brown established a "vetting process" for the Assistant Commissioner position, by which a panel would interview and select applicants for further consideration by a second panel, who would make the final selection. SAC ¶ 81. A panel composed of plaintiff, Hamblin, and another colleague interviewed Giraud for the position and collectively determined that Giraud would not advance in the application process, because she did not have a background or experience in investigations. Id. ¶ 82. Brown allegedly disregarded the first panel's decision and appointed Giraud to the position. Id. ¶¶ 26, 83. Plaintiff also alleges that Brown did not follow civil service managerial allocation guidelines in determining the managerial level of the Assistant Commissioner of CID. Id. ¶ 78. After Giraud became Assistant Commissioner of CID, her salary increased from approximately $90,000 to $162,000. Id. ¶ 148; Am. Charge, ECF No. 42-1 at 19. Brown allegedly disregarded "problems with…Giraud's performance" while Giraud was serving as Assistant Commissioner of CID. SAC ¶ 84.

III.    Brown's Comments

In or around February 2019, Brown began subjecting plaintiff to disparaging comments. Id. ¶ 30. For example, in a meeting with plaintiff in April 2019, Brown stated, "before you become the Deputy Commissioner, let us know what you can do for HR." Id. ¶ 31. Plaintiff had not informed Brown that he was seeking the deputy commissioner position. Id. In at least one

other meeting with plaintiff, Brown commented, "when you have been in a place for so long, you cannot see things differently, we need new blood." SAC ¶ 54. In an email dated August 7, 2019, Brown asked plaintiff if he could "take the laboring oar…and spend today getting it done?" in reference to drafting a job post for a Deputy Commissioner position. Id. ¶ 52; Am. Charge, ECF No. 42-1 at 25. Plaintiff also alleges that Brown verbally and in writing[4] characterized plaintiff as having a "grandiose view" of his experience that "entitles" him to a position of leadership, and that he wanted to "inherit" a senior management position. SAC ¶¶ 33–34. Plaintiff alleges that Brown never characterized his colleagues Hamblin or Giraud's senior management aspirations in such terms. Id. ¶¶ 35, 52.

IV.    Discrimination Complaints

On May 1, 2019, plaintiff took a leave of absence "due to high emotional distress." Id. ¶ 48. During his leave of absence, plaintiff complained to the FDNY's Assistant Commissioner of Equal Employment Opportunity ("EEO") about Brown and her treatment towards him. Id. After plaintiff returned to the FDNY, on or around June 25, 2019, Brown asked a colleague whose work plaintiff oversaw to give plaintiff an assignment. SAC ¶ 39. In an email dated July 12, 2019, Brown discussed reassigning plaintiff's responsibilities to an U.S.-born employee who plaintiff supervised without notifying plaintiff. Id. ¶ 47; Am. Charge, ECF No. 42-1 at 23.

On August 22, 2019, plaintiff met with Brown and two employees of the Bureau of Technology Development and Systems ("BTDS"), during which meeting plaintiff noted that there was information he had requested from BTDS but had not received. SAC ¶ 44. Plaintiff alleges that prior to that meeting, Brown had failed to forward him "updated information" that

---

[4] These comments are contained in the FDNY's position statement filed with the EEOC in response to plaintiff's charge or amended charge. ECF No. 42-1 at 24 n. 17. While portions of the position statement are cited in plaintiff's complaint, plaintiff does not attach the full position statement to the SAC or in his opposition to the instant motion.

she had received from BTDS in June 2019, and that Hamblin went on maternity leave shortly thereafter without following up with plaintiff or Brown on "outstanding matters." Id. ¶¶ 42–43. Plaintiff alleges that the FDNY did not "subject" Hamblin or Brown to "scrutiny" for "whatever delays" they caused regarding this incident. Id. ¶ 45. Plaintiff complained about Brown's comments and treatment of him to the FDNY's Chief of Staff and Chief of Department later that day. Id. ¶ 46.[5]

On or around September 4, 2019, the same day that plaintiff reverted from his role as Director of Civilian Learning and Development to a non-managerial role as Administrative Staff Analyst, see supra p. 3, Brown told plaintiff to leave the Human Resources bureau or face demotion. SAC ¶ 22; Am. Charge, ECF No. 42-1 at 50. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 12, 2019, in which he alleged discrimination based on his sex and national origin. SAC ¶ 16. Plaintiff alleges that the FDNY significantly reduced his duties, transferred his duties to a subordinate, and "excluded him from decision-making responsibilities" after he filed the EEOC charge. Id. ¶ 132. On January 30, 2020, plaintiff filed an amended charge to include claims of retaliation for filing the September 2019 EEOC charge. See generally Am. Charge, ECF No. 42-1.

On September 3 and September 4, 2020, Benny Thottam[6] encouraged plaintiff to transfer to BTDS, which was being reorganized at that time. SAC ¶ 93. Thottam told plaintiff that he should transfer without a pay increase, and that Thottam would try to get plaintiff an increase after defendant Stephen Rush, then Deputy Commissioner for Budget and Finance, retired. Id.

---

[5] Plaintiff also alleges he complained about Brown's discriminatory treatment towards him to members of the "FDNY executive staff" without specifying when this happened or the nature of the complaint. SAC ¶ 17. To plaintiff's knowledge, no actions were ever taken to investigate his discrimination complaints. Id.

[6] Although plaintiff does not allege Thottam's title, plaintiff refers to Thottam as a member of the FDNY executive staff. SAC ¶ 17.

Plaintiff alleges that during his employment, Rush had an "extensive reach in employment and compensation decisions" and repeatedly denied plaintiff's requests for a salary increase. Id. ¶¶ 11, 93. Plaintiff alleges that defendant Daniel Nigro, then Fire Commissioner, relied on Rush's advice in budget and finance matters. Id. ¶ 11. On September 3, 2020, the FDNY changed plaintiff's title, and plaintiff became a direct report of director Kevin Jones, a black male who allegedly "elevated primarily female and white employees." Id. ¶ 135.

The EEOC issued plaintiff a Notice of Right to Sue on September 30, 2020. Id. ¶ 18. On December 21, 2020, plaintiff filed the instant complaint. ECF No. 1. On February 8, 2021, Thottam sent plaintiff a text message suggesting that he look at "pending legislation about early retirement." SAC ¶ 140. On March 18, 2021, a background investigator at the DOI contacted plaintiff to commence a background investigation regarding his promotion to manager level 2 on February 21, 2016. Id.[7]

## V.    Disparate Impact

Plaintiff alleges that in 2020, the FDNY employed around 2,000 individuals, 24 of whom held senior managerial positions and 70 of whom held middle managerial positions. SAC ¶ 88. He alleges that around 75% of senior staff on the "senior staff list" are white, 42% are white male, 33% are female, and that there is "no representation of black males." Id. Plaintiff does not cite any source in proffering these statistics.[8] However, he alleges that these statistics demonstrate a "substantial demographic imbalance" at the FDNY that can be attributed to an effort to "bar[]" or "dislodge[]" black male applicants from middle and senior management positions. SAC ¶ 91. He also alleges that the FDNY fails to promote black male employees who

---

[7] The SAC does not state whether plaintiff is still employed at the FDNY and if not, when plaintiff's employment at the FDNY ended and under what circumstances.
[8] As an HR professional, plaintiff may have access to information which supports these statistics, but he fails to provide this information.

serve as deputies to Assistant or Associate Commissioner positions and lists the names of several employees in those roles, including himself. Id. ¶ 91 n.5. By contrast, several white employees were appointed through a "truncated internal process" to senior management positions. Id. Plaintiff alleges that defendants use "subjective internal employment/promotional practices" that include pre-selecting candidates, posting notices for less than the minimum 10-day requirement, and "manipulating" postings, such that plaintiff, a "black male foreign-born applicant" was disparately impacted. SAC ¶¶ 95, 100. Specifically, plaintiff alleges that defendant Rush repeatedly denied plaintiff's requests for a salary increase and "manipulated job descriptions" to justify increases for Rush and his white male subordinates. Id. ¶ 93. Plaintiff also alleges that he was discriminated against by being treated differently, including in assignment of responsibilities, and unequal compensation to that of his female and white male coworkers. Id. ¶ 101.

VI.    Procedural History

Plaintiff filed the complaint in this action on December 21, 2020. ECF No. 1. Defendants notified the Court of their intent to move to dismiss the complaint on April 28, 2021. ECF No. 15. Plaintiff responded to defendants' anticipated motion on June 17, 2021, ECF No. 20, and amended his complaint on July 13, 2021. ECF No. 27. Defendants notified the Court of their intent to move to dismiss the amended complaint on July 23, 2021. ECF No. 28. A pre-motion conference was held on October 4, 2021, during which the Court ordered plaintiff to file a second amended complaint by December 20, 2021. ECF No. 32. Plaintiff filed a second amended complaint on December 28, 2021. ECF No. 33. Defendants now move to dismiss the second amended complaint, ECF No. 38; plaintiff opposes defendants' motion, Plf. Opp'n, ECF No. 42; and defendants have replied, Defs. Reply, ECF No. 43.

9

## DISCUSSION

Defendants move to dismiss plaintiff's SAC pursuant to Rule 12(b) of the Federal Rules of Civil Procedure "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with" a defendant's liability or "speculative," Twombly, 550 U.S. at 555–56; they must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

In deciding a motion to dismiss, the Court has the "obligation to construe *pro se* complaints liberally, even as [it] examine[s] such complaints for factual allegations sufficient to meet the plausibility requirement." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted). "It is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Meadows v. United Servs., Inc., 963 F.3d 240, 243 (2d Cir. 2020) (citations omitted). In addition to the complaint, the Court may consider documents attached to the complaint, documents incorporated by

reference therein, or documents that the complaint "relies heavily upon" and are "integral" to the complaint, even if not incorporated by reference. Chambers, 282 F.3d at 152–53. The Court may also consider "factual allegations made by a *pro se* party in his papers opposing the motion" to dismiss. Antrobus v. City of New York, No. 19-CV-6277, 2021 WL 848786, at *3 (E.D.N.Y. Mar. 5, 2021) (citing Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

    I.    Exhaustion of ADEA Claims

    Prior to filing a suit in federal court under the ADEA or Title VII, a plaintiff must exhaust all administrative remedies. Tanvir v. New York City Health & Hosps. Corp., 480 F. App'x 620, 621 (2d Cir. 2012) (summary order) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." (quoting Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001))). To exhaust administrative remedies, a plaintiff must file a charge of discrimination with the EEOC or an analogous state agency. 29 U.S.C. § 626(d); Spruill v. N.Y.C. Health & Hosp., No. 06-CV-11362, 2007 WL 2456960, at *2 (S.D.N.Y. Aug. 23, 2007)[9] ("A plaintiff must exhaust his administrative remedies with the EEOC or an authorized agency before filing . . . ADEA claims in federal court."), aff'd 367 F. App'x 269 (2d Cir. 2010) (summary order). "The purpose of this exhaustion requirement is 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998) (quoting Stewart v. U.S. Immigration & Nat. Serv., 762 F.2d 193, 198 (2d Cir. 1985)). "The administrative exhaustion requirement applies to *pro se* and counseled plaintiffs alike." Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015) (citation omitted).

---

[9] The Clerk of Court is respectfully directed to send plaintiff the attached copies of all the unreported cases cited herein.

Under the EEOC's implementing regulations, a charge must be in written form, identify the parties, and generally describe the alleged discriminatory acts.  29 C.F.R. §§ 1601.9, 1601.12. These regulations "have been broadly interpreted, and courts look to the charging document as a whole in determining whether the plaintiff has met the exhaustion requirements." France v. Touro Coll., No. 14-CV-4613, 2016 WL 1105400, at *5 (E.D.N.Y. Feb. 16, 2016), R&R adopted sub nom. Ueth France v. Touro Coll., 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016). Courts will find a charge sufficient if "[in] addition to the information required by the regulations . . .[,]" the filing is "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 402 (2008). Exhaustion of administrative remedies is not a "jurisdictional requirement" but rather a "precondition" to bringing claims in federal court that is "subject to equitable defenses." Id.

Here, plaintiff's initial EEOC, charge filed on September 12, 2019, alleges discrimination based on gender and national origin but does not allege any discriminatory conduct based on plaintiff's age. See generally Initial EEOC Charge (Ex. A), ECF No. 38-2. Similarly, the amended charge filed on January 30, 2020 adds allegations of retaliation but makes no mention of age discrimination. [10] See generally Am. Charge, ECF No. 42-1. Rather, in a footnote, plaintiff alleges: "the FDNY [in its position statement] states that I have made a claim of

---

[10] Plaintiff's initial and amended charge also do not expressly raise a race-based discrimination claim. Nevertheless, defendants do not argue that plaintiff's race discrimination claims should be dismissed for failure to exhaust administrative remedies. While defendants could raise failure to exhaust in their answer, see Hunt v. Con Edison Co. N.Y.C., No. 16-CV-0677, 2018 WL 3093970, at *4 (E.D.N.Y. June 22, 2018)—this Circuit has held that checking the box for national origin in the EEOC charge is sufficient to overcome an exhaustion defense. See, e.g., Deravin v. Kerik, F.3d 195, 199, 203 (2d Cir. 2003) (finding that while plaintiff only checked the boxes for "national origin" and "retaliation" in the EEOC charge, the "line between discrimination on account of race…and national origin…may be so thin as to be indiscernible" such that a race discrimination claim "could be reasonably expected to grow out of" the charge's allegations.); Rojas v. Hum. Res. Admin., No. 18-CV-6852, 2022 WL 3716851, at *9 (E.D.N.Y. Aug. 29, 2022) (finding that plaintiff's claim that he was discriminated against due to his national original gave the EEOC adequate notice to investigate discrimination based on his race).

discrimination based on age. I have not previously asserted discrimination based on age [but] reserve the right to further amend this charge, if the EEOC's investigation finds that I was also discriminated against based on age." Am. Charge, ECF No. 42-1 at 3.

Plaintiff contends that he thus "preserved" his age discrimination claim in the amended charge. Plf. Mem. of Law at 5, ECF No. 42. However, plaintiff cannot satisfy the ADEA's condition precedent to bringing his claims in federal court by reserving the right to assert additional claims at a future date. The charge must make some allegation of discriminatory conduct because of his age and be "reasonably construed as a request for the agency to take remedial action to protect his rights" under the ADEA. Holowecki, 552 U.S. at 402. Plaintiff refers to the FDNY's position statement in his amended EEOC charge but neither attaches it to the complaint nor to his opposition papers.[11] There is no showing that the EEOC investigated plaintiff's age discrimination claim. Holowecki, 552 U.S. at 386–87; Muhammad v. New York City Transit Auth., 52 F. Supp. 3d 468, 477 (E.D.N.Y. 2014) ("[T]he 'primary purpose' of filing a charge of discrimination with the EEOC 'is to alert the EEOC to the discrimination that a plaintiff claims she is suffering' in order 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'") (quoting Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401–02 (2d Cir. 1993))). As plaintiff failed to exhaust his administrative remedies for his ADEA claim, defendants' motion to dismiss plaintiff's ADEA claim should be granted.

## II.   Individual Liability under Title VII and the ADEA

Plaintiff's federal claims against individual defendants Brown, Rush, and Nigro should also be dismissed, as neither Title VII nor the ADEA subjects individuals, "even those with

---

[11] Though plaintiff "incorporate[s] by reference" portions of defendants' position statement into the SAC, he does not include portions relevant to his age claim.

supervisory liability over the plaintiff, to personal liability." Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order). Plaintiff argues that individual defendants may be held liable in cases of "intentional civil rights violations" and cites a 2014 decision from the Eastern District of Virginia, Jones v. HCA, 16 F. Supp. 3d 622 (E.D. Va. 2014), in support of his position. Plf. Mem. of Law at 5. Plaintiff's reliance on Jones is misplaced.

It is well established that there is no right of recovery against individuals under Title VII or the ADEA. Guerra, 421 F. App'x at 17; Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) ("[T]he remedial provisions of Title VII…do not provide for individual liability." (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313–14 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998))); Thomas v. New York City Dep't of Educ., 938 F. Supp. 2d 334, 354–355 (E.D.N.Y. 2013), order clarified, No. 10-CV-464, 2017 WL 11502666 (E.D.N.Y. Aug. 2, 2017) (finding that the "issue appears settled" that there is no individual liability for Title VII or ADEA claims).

The Virginia district court's decision in Jones does not hold that individuals can be held liable for discriminatory acts that are found to be intentional: the plaintiff in Jones did not name any individual defendants, and nowhere in the decision does the district court reason that a supervisor or any other individual could be subject to liability for the plaintiff's claims. While plaintiff correctly notes that the NYSHRL and NYCHRL impose individual liability in certain circumstances, the standards set forth in these state and local statutes have no bearing on whether an individual can be held liable under federal law. Accordingly, defendants' motion to dismiss plaintiff's claims against defendants Brown, Rush, and Nigro under Title VII and the ADEA should be granted.

III.    Discriminatory Treatment under Title VII

Plaintiff pleads discriminatory treatment on the basis of his race, national origin, and gender pursuant to Title VII. Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015). To determine whether plaintiff has met his burden on a motion to dismiss, the Court looks to the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973). Under the McDonnell Douglas framework, plaintiff must first establish a *prima facie* case of discrimination by showing that: (i) the plaintiff was a member of the protected class; (ii) plaintiff was qualified for the job; (iii) plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 137–38 (citation omitted).

At the motion to dismiss stage, plaintiff's burden to establish a *prima facie* case of discrimination is "minimal" or *de minimis.* Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001); see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (plaintiff's burden "is not onerous"). If plaintiff succeeds in establishing a *prima facie* case, there is a temporary presumption of discrimination, and "the burden of production shifts to the employer 'to articulate some legitimate, non-discriminatory reason'" for the adverse employment action. Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311 (1996)). If defendants articulate such a reason, the burden shifts back and remains with plaintiff to provide evidence that

defendants' proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Patterson, 375 F.3d at 221.

Here, defendants concede that Ogula is a member of a protected class based on his national origin, race, and gender. Defs. Mem. of Law, ECF No. 38-6 at 17. Defendants also concede that plaintiff was qualified for the positions he held at the FDNY. Id. Plaintiff alleges that in spite of his years of experience in HR, defendants denied him the Associate Commissioner position for which he applied in May 2019 and selected Hamblin instead, one of plaintiff's female colleagues with comparatively less experience. SAC ¶¶ 28, 54–55; Plf. Mem. of Law at 9.

An employer's failure to promote is a "discrete act" that "constitutes a separate actionable unlawful employment practice" under Title VII. Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); Levitant v. City of N.Y. Human Res. Admin., 558 F. App'x 26, 29 (2d Cir. 2014) (summary order) ("It is well-established that a failure to promote is an adverse employment action." (citation omitted)). Liberally construing plaintiff's second amended complaint, plaintiff alleges that he suffered an adverse employment action when the FDNY failed to promote him to the Associate Commissioner position. See Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004) ("A tangible employment action, as defined by the Supreme Court, constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." (citation and internal quotation marks omitted)); see also Jones v. Target Corp., No. 15-CV-4672, 2016 WL 50779, at *2 (E.D.N.Y. Jan. 4, 2016) ("An 'adverse employment action' means 'a materially adverse change in the terms and conditions of employment' and includes,

among other things, termination, demotion or a failure to promote." (quoting Robinson v. Dibble, 613 F. App'x 9, 12 (2d Cir. 2015) (summary order))).

However, plaintiff's allegations regarding the appointments of two other female colleagues, Giraud and Brooks, cannot be construed as failure to promote claims, or that the FDNY took adverse action against *him*. Plaintiff does not allege that he applied for and was passed over for the positions defendants awarded to Giraud and Brooks, nor does he allege that Giraud's or Brooks' promotions resulted in a material loss or change in the terms and conditions of his employment. Savarese v. William Penn Life Ins. Co. of New York, 418 F. Supp. 2d 158, 162 (E.D.N.Y. 2006) (dismissing plaintiff's claims for failure to demonstrate any demotion, reduction in salary, assumed less distinguished title, or material loss of benefits). Plaintiff also alleges that Brown reassigned some of his responsibilities to one of his direct reports but fails to allege in any detail what those responsibilities were or whether that reassignment was in any way significant. Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ("To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." (internal quotation marks omitted)).

More importantly, plaintiff does not sufficiently allege circumstances giving rise to an inference of discrimination. Whether certain facts demonstrate a plausible inference of discrimination is a "flexible [standard] that can be satisfied differently in different factual scenarios." Howard v. MTA Metro-N. Commuter R.R., 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011). A variety of circumstances can give rise to an inference of discriminatory intent, including but not limited to "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events

leading to the plaintiff's discharge." Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009) (internal quotation marks omitted). When an employer's remarks are probative of discriminatory intent, district courts in this Circuit regularly consider the following factors: (1) the identity and position of the individual making the remark, (2) the timing of the remark in relation to the employment decision, (3) the content of the remark, and (4) the context in which it was made. Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

Here, plaintiff alleges that Brown as head of HR and his supervisor failed "to utilize the mechanisms …established to ensure fairness in promotions" of his female colleagues. Plf. Mem. of Law at 9. However, plaintiff does not allege any facts to infer that the selection of his colleagues as opposed to him was based in animus towards his race, national origin, or gender. See Greenidge v. New York City Dep't of Prob., No. 18-CV-4067, 2018 WL 3973010, at *2 (E.D.N.Y. Aug. 20, 2018) (noting that Title VII "does not prohibit discrimination based solely on favoritism" and finding that plaintiff's allegations provided "no facts that could possibly connect any adverse employment action to a protected status."); see also Khaleel v. Swissport USA, Inc., No. 15-CV-4880, 2015 WL 5307733, at *2 (E.D.N.Y. Sept. 10, 2015) (dismissing Title VII discrimination claim because "[e]ven under the most liberal interpretation of [plaintiff's] complaint, he provides no facts that could possibly connect or link any adverse employment action to a protected status"). As an HR professional with over twenty-five years of experience in the field, Am. Charge, ECF No. 42-1 at 4, plaintiff should understand that defendants' violation of or deviation from their own policies or procedures does not in and of itself give rise to an inference of discriminatory intent. McGrath v. Arroyo, No. 17-CV-1461, 2019 WL 3754459, at *7 (E.D.N.Y. Aug. 8, 2019) (collecting cases and finding that deviations from FDNY policy were insufficient to plausibly allege discriminatory motive).

Likewise, plaintiff fails to plausibly allege that his supervisor's comments were motivated by discriminatory animus. Plaintiff alleges that Brown made a number of demeaning comments towards him, including that he felt "entitle[d]" to a promotion and that he should "take the laboring oar" on a task that had been assigned to him. SAC ¶¶ 33–34, 52; Am. Charge, ECF No. 42-1 at 25. While Brown's remarks may have been needlessly offensive or condescending, plaintiff does not sufficiently allege the context or timing of the remarks such that they could plausibly be connected to plaintiff's race, national origin or gender.[12] Giambattista v. Am. Airlines, Inc., 584 F. App'x 23, 25–26 (2d Cir. 2014) (summary order) (finding that remarks that plaintiff was "crazy" or needed to be taken "away in white coats" were insufficient to raise an inference of discriminatory intent); Simpson v. MTA/New York City Transit Auth., No. 16-CV-3783, 2016 WL 8711077, at *4 (E.D.N.Y. Aug. 26, 2016) (dismissing plaintiff's Title VII claims, because plaintiff failed to allege how a request that plaintiff "take over" for another coworker was plausibly connected to plaintiff's race); Haynes v. Capital One Bank, No. 14-CV-6551, 2015 WL 2213726, at *2 (E.D.N.Y. May 8, 2015) (dismissing Title VII claim because plaintiff had failed to allege facts suggesting that adverse employment actions were connected to plaintiff's race). Therefore, defendants' motion to dismiss plaintiff's race, gender, and national origin discrimination claims under Title VII should be granted.

IV.    Retaliation under Title VII

Plaintiff also alleges defendants retaliated against him after he complained about defendants' discriminatory treatment and filed an EEOC charge. Title VII forbids an employer

---

[12] Plaintiff also alleges that Brown announced in a group meeting that the department needed "new blood." SAC ¶ 54. Even if plaintiff's ADEA claims had been exhausted, other courts have held that statements related to needing 'new blood' do not give rise to an inference of age discrimination. See, e.g., Carter v. Verizon, No. 13-CV-7579, 2015 WL 247344, at *6 (S.D.N.Y. Jan. 20, 2015) (collecting cases).

from retaliating against an employee opposed to "any practice made...unlawful" by the statue, or because the employee filed "a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a *prima facie* case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). Retaliation claims under Title VII are also analyzed under the McDonnell Douglas burden-shifting framework. Littlejohn v. City of New York, 795 F.3d 297, 315 (2d Cir. 2015).

Plaintiff's complaints of discrimination to the FDNY, SAC ¶ 131, and the subsequent filing of his EEOC charge, id. ¶ 132, constitute protected activity, so long as plaintiff believed in good faith that he suffered from the discrimination he alleged. Jagmohan v. Long Island R. Co., 622 F. App'x 61, 64 (2d Cir. 2015) (summary order) ("A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable." (citing Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998))); Summa v. Hofstra University, 708 F.3d 115, 126 (2d Cir. 2013) (Title VII protects employees who make informal protests of discrimination to management "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" (alteration in original)). Defendants were presumably aware of plaintiff's complaints to FDNY leadership and certainly knew of the EEOC charge filed against them.

Plaintiff alleges that after filing his initial EEOC charge in September 2019, he suffered a number of adverse actions, including: reassignment of his responsibilities to a subordinate,

assignment of responsibilities not commensurate with plaintiff's qualifications and skills, constructive threats of termination, "ostraciz[ation] from department meetings, agency functions, and events[,]"and "preclu[sion] from fair and equitable compensation" while salary increases were given to other employees. SAC ¶¶ 132–134. To establish a *prima facie* retaliation claim, "the retaliatory act [need not] bear on the terms or conditions of employment," so long as "the employer's actions were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks v. Baines, 593 F.3d 159, 169 (2d Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)); Vogel v. CA, Inc., 662 F. App'x 72, 76 (2d Cir. 2016) (summary order). While plaintiff does not specifically allege the loss in responsibilities or constructive threats of discharge he suffered, the facts liberally construed suggest actions beyond "petty slights, minor annoyances, and simple lack of good manners" such that they would dissuade a reasonable worker from pursuing their complaints further. White, 548 U.S. at 68.

However, plaintiff has not sufficiently alleged a causal connection between his complaints and any of the FDNY's actions. To establish a causal connection between the protected activity and an adverse action that followed, plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Vega, 801 F.3d at 91 (citation omitted). But-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Id. (quoting Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834, 846 (2d Cir. 2013)). But-for causation also does not relieve the plaintiff of demonstrating causation through temporal proximity. Id. (quoting Zann Kwan, 737 F.3d at 845).

Plaintiff alleges in conclusory fashion that the FDNY took adverse actions against him without any clarity as to when defendants' actions were taken or whether the actions were close in time to when plaintiff complained to FDNY leadership or filed his EEOC charge. De Figueroa v. New York, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (noting that where a plaintiff pleads a causal connection based on timing alone, the Second Circuit has generally held that "a lapse of time beyond two or three months will break the causal inference."); see Gallardo v. IEH Corp., No. 21-CV-3257, 2022 WL 4646514, at *7 (E.D.N.Y. Oct. 1, 2022) (dismissing plaintiff's retaliation claim, because five months had passed between plaintiff's complaint and the adverse employment action, and there was an "absence of any other facts suggesting she was terminated because of the complaint.").

Plaintiff alleges that on February 8, 2021—over a year after filing his EEOC charge in September 2019, SAC ¶ 16, and his amended charge in January 2020, see generally Am. Charge, ECF No. 42-1—plaintiff received a text from Thottam, a member of FDNY executive staff, suggesting that plaintiff look into pending legislation on early retirement, SAC ¶ 140.[13] A month after this text, the DOI commenced a background investigation into plaintiff's promotion in 2016. Id. Even liberally construing plaintiff's allegations regarding retaliation, the length of time between the filing of plaintiff's charge and the receipt of Thottam's text or the commencement of DOI's investigation into plaintiff's 2016 promotion is far too long to infer that plaintiff's protected activity was the but-for cause the FDNY's adverse actions. Kalia v. City Univ. of New York, No. 19-CV-6242, 2020 WL 6875173, at *6 (S.D.N.Y. Nov. 23, 2020) (finding that plaintiff failed to plead a retaliation claim where plaintiff could not "establish precisely when any of the other alleged retaliatory actions took place after he filed the EEOC charge").

---

[13] The Court assumes plaintiff was still employed at the FDNY when he received Thottam's text regarding early retirement.

The Court is in the dark as to when and if plaintiff's employment with the FDNY ended and under what circumstances. Especially in a case with a very educated HR professional like plaintiff who already amended his complaint before the instant motion was made, the Court cannot overlook the lack of this information. As plaintiff fails to allege the causal connection between his complaints regarding discrimination and defendants' actions, defendants' motion to dismiss plaintiff's retaliation claims under Title VII should be granted.

V.    Hostile Work Environment under Title VII

Plaintiff also alleges that he was subjected to a hostile work environment because of his national origin. To establish a hostile work environment claim under Title VII, plaintiff must show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Rasmy v. Marriott Int'l, Inc., 952 F.3d 379, 387 (2d Cir. 2020) (citation, internal quotation marks, and alterations omitted). Plaintiff must also demonstrate that the conduct occurred because of his membership in a protected class. Tillery v. New York State Off. of Alcoholism & Substance Abuse Servs., 739 F. App'x 23, 27 (2d Cir. 2018) (summary order). Plaintiff "must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). The Court looks at the totality of the circumstances and considers "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." Daeisadeghi v. Equinox Great Neck, Inc., 794 F. App'x 61, 63–64 (2d Cir. 2019) (summary order) (citation and internal quotation marks omitted).

Construing the record in the light most favorable to plaintiff, the facts alleged do not support a plausible hostile work environment claim. Plaintiff alleges that beginning in February 2019, Brown subjected him to "multiple occasions of harassment and ridicule" during which she "sarcastically minimized his role" in order to "forc[e] him out of HR." SAC ¶ 30.  Plaintiff also alleges that his coworkers Thottam and Dowling subjected plaintiff to "verbal and written unwelcomed conduct." Id. ¶ 107. Plaintiff does not allege the content or context of these incidents let alone the severity, timing, or frequency of when they occurred. Plaintiff has likewise given no facts to support that the comments caused him psychological harm or otherwise interfered with his work or "altered the conditions of [his] working environment." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). Upon review of plaintiff's SAC and opposition papers, the allegations asserted "do not elevate the status of [plaintiff's] work environment to one that was hostile." De La Pena v. Metro. Life Ins. Co., 953 F. Supp. 2d 393, 417–18 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014) (summary order) (dismissing plaintiff's claims that a hostile work environment was created because of her protected status, either race, color, or national origin).

While defendants' conduct may have been insulting, inappropriate, or even abusive, plaintiff makes no plausible inference that the conduct resulted from discriminatory animus towards him as a Nigerian-born employee. Falcon v. City Univ. of New York, 263 F. Supp. 3d 416, 431 (E.D.N.Y. 2017) ("The fact that [the] Plaintiff may be a member of a minority group and something happens to [her] that [s]he does not like is not nearly sufficient to…plead a cause of action for hostile work environment pursuant to Title VII." (citation and internal quotations omitted)). While the Court acknowledges that plaintiff may have felt humiliated by defendants' denigrating behavior and that he was unfairly diminished in his role, the animosity he alleges

does not rise to the level of a hostile work environment under Title VII. Plaintiff has the burden

of demonstrating that his "perceived" environment was also "objectively abusive and hostile."

Demoret, 451 F.3d at 149. Plaintff fails to meet that burden here. Therefore, defendants' motion

to dismiss plaintiff's hostile work environment claim should be granted.

VI.   Disparate Impact under Title VII

Plaintiff alleges a disparate impact claim under Title VII based on his national origin,

race, and gender. SAC ¶¶ 3, 91 n. 5. A plaintiff may bring a disparate impact claim under Title

VII where he can "demonstrate that a respondent uses a particular employment practice that

causes a disparate impact on the basis of race, color, religion, sex, or national origin. . . ." 42

U.S.C. § 2000e–2(k)(1)(A)(i). To establish a *prima facie* case of disparate impact, a plaintiff

must show that a facially neutral employment policy or practice has a significant disparate

impact. Brown, 163 F.3d at 712 (citations omitted); Samuels v. William Morris Agency, No. 10-

CV-7805, 2011 WL 2946708, at *3 (S.D.N.Y. July 19, 2011) ("A plaintiff's allegation must (1)

identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal

relationship between the two." (citation omitted)). Plaintiff need not set out facts that would

establish every element of a *prima facie* case but must give defendants notice of the nature of his

complaint. Samuels, 2011 WL 2946708, at *3.

Here, plaintiff fails to identify a facially neutral policy or practice of the FDNY. Plaintiff

has not adequately demonstrated that pre-selecting candidates, pulling down job posts before the

10-day minimum requirement, or denying certain black male applicants for promotion are

policies or practices of the FDNY, much less facially neutral ones. SAC ¶¶ 65, 78–83, 100;

Attard v. City of New York, 451 F. App'x 21, 24 (2d Cir. 2011) (summary order) (finding that a

"preference" for disciplining older employees was not a "neutral practice").

25

Even if plaintiff had sufficiently alleged a facially neutral FDNY policy or practice, plaintiff has not alleged how that policy or practice adversely or disproportionally impacts members of a larger protected group. "The basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy. This comparison must reveal that although neutral, the policy in question imposes a 'significantly adverse or disproportionate impact' on a protected group of individuals." Malone v. New York Pressman's Union No. 2, No. 07 CIV. 9583, 2011 WL 2150551, at *7 (S.D.N.Y. May 31, 2011) (citing Tsombanidis v. West Haven Fire Dept., 352 F.3d 565, 575 (2d Cir. 2003)). Plaintiff here claims that he was assigned different responsibilities and earned unequal wages than those of his female and white male coworkers. SAC ¶ 101. Plaintiff focuses on how these alleged practices impacted *him* individually. Id. ¶ 115. Plaintiff also attempts to show how the FDNY's alleged policies and practices disproportionately impact other black male employees with statistics—for which he cites no authority—reflecting a "substantial demographic imbalance" among senior staff. Id. ¶¶ 88, 91. Even taking plaintiff's allegations as true, plaintiff raises no plausible connection between this "imbalance" and an effort to "bar" or "dislodge" black male applicants from middle and senior management positions, or any other policy or practice. Id. "Allegations which contend only that there is a bottom line racial imbalance in the work force are insufficient." Coach Stores, Inc., 163 F.3d at 712. Accordingly, defendants' motion to dismiss plaintiff's disparate impact claim under Title VII should be granted. [14]

---

[14] Plaintiff also alleges under his fourth claim for relief that he believes the FDNY's "internal employment decisions, policies and/or practices had an adverse and disparate on him because of his age" without providing additional facts to support this claim. SAC ¶ 123. Even if plaintiff's ADEA claim were not dismissed for failure to exhaust, his disparate impact claim based on age would fail for the same reason that his other disparate impact claims fail.

VII.    EPA

Plaintiff has not sufficiently alleged that the FDNY violated the EPA by paying his female colleagues more than plaintiff for substantially equal work. The EPA, a subsection of the minimum wage provision of the Fair Labor Standards Act ("FLSA"), prohibits employers from discriminating against employees on the basis of gender by paying employees of one gender lower wages than employees of another gender. 29 U.S.C. § 206(d). To sufficiently allege a violation of the EPA, a plaintiff must show that "(1) the employer paid lower wages to employees of the opposite sex; (2) the employees performed equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs were performed in similar working conditions." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254–55 (2d Cir. 2014) (quoting Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999) (internal quotation marks omitted)).

To demonstrate that the employees performed equal work, a plaintiff must allege sufficient facts, accepted as true, to permit the reasonable inference that the relevant employees' job content is "substantially equal." Id. at 256. "To satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." Id. at 255; see also 29 C.F.R. §§ 1620.15–1620.17 (EEOC regulations defining the statutory terms of equal skill, effort, and responsibility by emphasizing the centrality of job content). Thus, in EEOC v. Port Authority of New York and New Jersey ("Port Authority"), the Second Circuit granted defendant's motion to dismiss where the EEOC failed "to allege *any* facts concerning…actual job duties" thereby depriving "the Court of any basis from which to draw a reasonable inference of…'equal work.'" 768 F.3d 247, 249 (2d Cir. 2014) (emphasis in the original).

Here, as in <u>Port Authority</u>, plaintiff fails to allege facts to support his conclusion that he performed substantially equal work to that of his female co-workers. Rather, plaintiff focuses on whether his co-workers held the requisite skills and qualifications for the more senior positions to which they were promoted, SAC ¶¶ 28–29, 77, and the higher salaries they received because of their promotions. <u>Id.</u> ¶ 148; Am. Charge, ECF No. 42-1 at 19. Apart from the Associate Commissioner position, plaintiff does not allege that he applied for those senior positions or that he was qualified for them. SAC ¶¶ 21, 70. Plaintiff does not even allege his own job duties and responsibilities. As such, defendants' motion to dismiss plaintiff's claim under the EPA should be granted.

VIII.    Amending Complaint

Although a court should not dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated[,]" courts may deny leave to replead where amending the complaint would be futile. <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiff is a highly educated professional with over twenty-five years of experience in HR, who has already been afforded two opportunities to amend his complaint. Even liberally construing plaintiff's second amended complaint and the facts alleged in his opposition to the instant motion, plaintiff has not plausibly alleged any of his federal law claims. <u>Cuoco</u>, 222 F.3d at 112 ("The problem with [plaintiff's] causes of action [are] substantive; better pleading will not cure [them]. Repleading would thus be futile. Such a futile request to replead should be denied."). The Court should not grant plaintiff leave to amend a third time.

IX.     Supplemental Jurisdiction over State and City Law Claims

A district court may decline to exercise supplemental jurisdiction over the related state law claims presented in the action once it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(a). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Here, the Court should decline to exercise supplemental jurisdiction over plaintiff's claims under the NYSHRL, NYCHRL, and the NYLL without prejudice. Plaintiff may pursue these claims in state court. Id. at 352; Valencia ex rel. Franco v. Lee, 316 F.3d 299, 306 (2d Cir. 2003); see also Espinoza v. New York City Dep't of Transportation, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018) (declining to exercise jurisdiction over NYCHRL claims and any state law claims) (collecting cases).

## CONCLUSION

I respectfully recommend that defendants' motion to dismiss plaintiff's Title VII, ADEA, and EPA claims should be granted. Plaintiff's NYSHRL, NYCHRL, and NYLL claims should be dismissed without prejudice.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections shall be filed with the Clerk of the Court.

Any request for an extension of time to file objections must be made within the fourteen-day

period.  Failure to file a timely objection to this Report generally waives any further judicial

review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002);

Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474

U.S. 140 (1985).

SO ORDERED.


_____/S/_____

LOIS BLOOM
Dated: February 13, 2023                    United States Magistrate Judge
         Brooklyn, New York

30